IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER B. FRITH, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 07-0727-CG-B |
| | ) | |
| BALDWIN COUNTY COMMISSION, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

This matter comes before the court on two motions for summary judgment.  One was filed by defendant, Sheriff Huey Mack, Jr.  (Docs. 53, 54, 61, and 63).  The other was filed by defendant, Baldwin County Commission.  (Docs. 55, 56, 66, and 67).  The court **GRANTS** both of the motions.  All other motions pending in this case are **MOOT**.

This court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## I.    ALLEGATIONS

The plaintiff is Jennifer Frith ("plaintiff" or "Frith").  (Doc. 31, p. 2, ¶ 5).  The First Amended Complaint ("complaint") identifies the defendants as follows.  "The Defendants, Baldwin County Commission, is a county governmental entity.  Sheriff Huey Mack Jr., The Sheriff of Baldwin County."  (Doc. 31, p. 2, ¶ 6).  The court will refer to the Baldwin County Commission as the "County Commission" and to Sheriff Huey Mack, Jr. as "the sheriff."

Paragraphs one and two allege that the case arises "under the First Amendment of the United States Constitution of freedom of speech [and] the Fourteenth Amendment to the United States Constitution of the right to due process," as brought through 42 U.S.C. § 1983.  (Doc. 31, p. 1, ¶¶ 1 and 2).  Paragraph one also alleges that Frith is asserting a sexual discrimination claim

under Title VII.  (Doc. 31, p. 1, ¶ 1).

According to the complaint, Frith took a job with the Baldwin County Sheriff's Office[1] on December 5, 2005.  (Doc. 31, p. 2, ¶ 7).  She was a dispatcher assigned to the Communications Division, which is part of the Civil Affairs Command.  (Doc. 31, p. 2, ¶ 7).

On February 19, 2007, a co-worker named Ms. Flowers asked Frith for the address of another co-worker named Ms. Rivera.  (Doc. 31, p. 3, ¶ 9).  Frith gave Ms. Flowers Ms. Rivera's address because, Frith alleges, there was no policy precluding her from giving one co-worker another co-worker's address.  (Doc. 31, p. 3, ¶ 10).

On or about February 23, 2007, Frith was called to meet with an internal affairs investigator named Sgt. Milton and with an individual named Cpl. Gross.  (Doc. 31, p. 3, ¶¶ 11 and 12).  She was questioned about the events that transpired on February 19, 2007, and asked if she knew about any affairs that Ms. Flowers might have been having.  (Doc. 31, pp. 3-4, ¶ 13).  Frith was handed a letter from the sheriff, placing her on administrative leave with pay for misusing an "NCIC machine."  (Doc. 31, p. 4, ¶ 14).  Frith allegedly did not use an NCIC machine during the relevant time.  (Doc. 31, p. 4, ¶ 14).  Lt. Aldrich subsequently circulated a memorandum to other Communication Officers indicating that Frith was suspended with pay. (Doc. 31, p. 4, ¶ 15).

On February 27, 2007, the sheriff issued a letter, asking if others had violated an NCIC machine policy.  Frith told the sheriff that Sgt. Ron Cook used the NCIC machine for personal reasons but was not disciplined.  (Doc. 31, p. 4, ¶ 16).

---

[1]This court has already determined that the Baldwin County Sheriff's Office lacks the legal capacity to be sued under Rule 17 of the Federal Rules of Civil Procedure and Alabama law.  (Doc. 27).

2

At an unspecified time, Frith received a letter from Sgt. Milton, letting her know that she would be having a pre-disciplinary hearing with Frith's "Supervisor Major Anthony Lowery, Chief Charlie Jones, and Personnel Director Lynne Tedder."  (Doc. 31, p. 4, ¶ 17).  The sheriff signed the letter.  (Doc. 31, p. 4, ¶ 17).  Frith was not allowed to have an attorney at the hearing, allegedly in violation of the Sheriff's Department's policy.  (Doc. 31, p. 4, ¶ 18).  During the subsequent pre-disciplinary hearing,  Frith explained that Ron Cook "violated the same policy that Mrs. Frith was alleged to have violate[d]," but nothing came of her accusations.  (Doc. 31, pp. 4-5, ¶ 19).  A letter was eventually sent to Frith's lawyer's office, indicating that Frith was "guilty of the charge called 'Policy Governing the use, transmission, and storage of electronic information' and placed her on administrative leave without pay for three days."  (Doc. 31, p. 5, ¶ 20).

Frith alleges that three male deputies had "on duty" affairs with Ms. Flowers but were not disciplined.  (Doc. 31, p. 5, ¶ 21).

Frith called the office on Friday, March 2, 2007, to say that her doctor placed her on sick leave until March 7, 2007.  (Doc. 31, p. 5, ¶ 23).  On March 7, 2007, Frith turned in her resignation, effective immediately.  (Doc. 31, p. 6, ¶ 24).  Frith's final paycheck did not include "24 hours of sick time from March 5-6, 2007."  (Doc. 31, p. 6, ¶ 24).  Frith's time card bore a handwritten note indicating that Frith's last day at the Sheriff's Office was March 4, 2007, rather than the day she resigned, March 7, 2007.  (Doc. 31, p. 6, ¶ 24).

Frith alleges that she lost three days of salary and that she is due damages "for the exercise of his [sic] First Amendment Rights to his [sic] freedom of free speech by giving a fellow employee another employee's address when there is no policy against it, as well as

3

experiencing sexual discrimination at the hands of the Baldwin County Sheriff's Office."  (Doc. 31, p. 6, ¶ 25).  Frith also alleges that she is ineligible to work as a dispatcher in the future, and has lost the benefits that come with working at such a job, because of the administrative charge that was brought against her.  (Doc. 31, pp. 6-7, ¶ 25).

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  As the Eleventh Circuit succinctly stated:

> A factual dispute is genuine only if "a reasonable jury could return a verdict for the nonmoving party."  United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (citation omitted).  The moving party bears the burden of proving that no genuine issue of material fact exists.  O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the district court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor.  Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).  Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Info. Sys. and Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224-25 (11th Cir. 2002).

The purpose of summary judgment "is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592 (11th Cir. 1995), cert. denied sub nom. Jones v. Resolution Trust Corp., 516 U.S. 817 (1995).

In opposing a motion for summary judgment, "a party may not rely on his

4

pleadings to avoid judgment against him." <u>Ryan v. Int'l Union of Operating Engrs, Local 675</u>, 794 F.2d 641, 643 (11th Cir. 1986).  There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  <u>Blue Cross & Blue Shield v. Weitz</u>, 913 F.2d 1544, 1550 (11th Cir. 1990).  Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.  <u>Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.</u>, 10 F.3d 1563, 1568 (11th Cir. 1994)(citing <u>Lazzara v. Howard A. Esser, Inc.</u>, 802 F.2d 260, 269 (7th Cir. 1986)), cert. denied, 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994).

<u>Id</u>. at 599.  The "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Celotex Corp.</u>, 477 U.S. at 323.  The failure by the nonmoving party to make a sufficient showing on an essential element of its action entitles the moving party to judgment as a matter of law.  <u>Id</u>. at 323.

## III.   FACTS

The Baldwin County Sheriff's Office hired Frith as a Communications Officer II in November 2005.  (Doc. 58-3, p. 2).  Her primary duties were to take calls from the public, enter those calls into the appropriate database using the Computer-Aided Dispatch System ("CAD"), and dispatch deputies.  (Doc. 58-3, p. 5, ¶ 3).

Frith received an Employee Guide and a Communications Center Standard Operations Procedure Manual when she was hired.  (Doc. 58-2, pp. 10-11).  The Employee Guide provides the following about the computer system: "The Computer System of the Sheriff is provided to employees at the expense of the Sheriff to assist them in carrying out the objectives of the Sheriff. . . . Employees shall not use the Computer System except as required by their job responsibilities of the Sheriff."  (Doc. 58-3, p. 20, ¶ IV).  It also provides:

> Confidential information received in the course of employment should never be transmitted or forwarded to individuals, agencies or other entities that are not authorized to receive the confidential information or to other employees of the

Sheriff's Office who do not require the knowledge of the information in order to perform their job responsibilities.

(Doc. 58-3, p. 21 ¶ 1).  Similarly, the Communications Center Standard Operating Procedures

Manual ("SOP") provides:

> Any information obtained by telephone, teletype, radio transmission or personal contact with any citizen, public or private agency and internal within the Sheriff's Office is deemed Confidential.  Any individual requesting any type of confidential information shall be directed to the Communications Supervisor or someone of higher authority.  No information shall leave the Communications Center unless a request for information form has been completely filled out by the individual requesting the information and upon receiving approval from the Communications Supervisor.  Individuals found in violation of this directive will be subjected to disciplinary action and possible penalties for the violation by the appropriate authorities.

(Doc. 58-3, p. 25).

On February 18, 2007, Frith was working the 8:00 p.m. to 8:00 a.m. shift.  (Doc. 58-2, p. 14).  Around 8:50 p.m., she logged onto MySpace and entered into a conversation with Dee Dee Flowers, who was another Communications Officer.  (Doc. 58-3, p. 31).  Frith knew that Ms. Flowers was on leave during the MySpace conversation.  (Doc. 58-2, pp. 17-18).  Ms. Flowers did not have access to the Communications equipment while she was on leave.  (Doc. 58-3, p. 35, ¶¶ 6 and 8).

Ms. Flowers asked Frith for the address of Carmen Rivera, so that she could try to "catch him [Ms. Flowers' husband] with her. . . so I can catch him in a lie," which would "give me a good chance of getting my kids back."  (Doc. 58-3, p. 30).  Frith agreed to Ms. Flowers' request and gave her the address, explaining "hell im leaving what is it going to hurt me : )."  (Doc. 58-3, p. 30).  Frith knew that Ms. Flowers did not need the information to perform her job function at the sheriff's department.  (Doc. 58-2, pp. 19-20).  Frith emphasized to Ms. Flowers that "this is

just mine and ur business!!!!!!!!!!!!!!!!!!!!" (Doc. 58-3, p. 28).

Ms. Flowers eventually informed Major Lowery of the conversation. (Doc. 58-3, p. 5, ¶ 6). Major Lowery launched an investigation and, according to disciplinary procedures, Frith was placed on administrative leave with pay. (Doc. 58-3, p. 5, ¶ 7). Frith received a letter dated February 23, 2007, advising her that the sheriff's office had "begun an Internal Affairs Investigation regarding misuse of the NCIC computer" and that she was placed on leave with pay. (Doc. 61-5, p. 1). She received a second letter dated February 27, 2007, indicating that the sheriff's office was "conducting an Internal Affairs Investigation regarding suspected misuse of our Computer Aided Dispatch (CAD) computer system, not an NCIC computer." (Doc. 61-9, p. 2).

> With respect to discipline, the Employee Guide provides as follows:
>
> If it is considered that a permanent merit employee be terminated, demoted, or suspended without pay for cause a pre-disciplinary hearing shall be held, unless extraordinary circumstances are present. Reason for the potential termination, involuntary demotion, or suspension must be given to the employee prior to the pre-disciplinary hearing.
>
> ***
>
> There shall be attached to all notices of termination, suspension without pay, or involuntary demotions that are delivered to the Personnel Officer, written evidence that a pre-disciplinary hearing was held prior to such action being taken. The notice of the aforementioned shall set forth the following:
> - The reason for the action taken,
> - The effective date of the termination, suspension without pay or involuntary demotion,
> - Any other information deemed appropriate by the Sheriff or Division Head, as the case may be.
>
> ***

V.   EMPLOYEE DISCIPLINE
A.   DISCIPLINARY ACTION

> For unsatisfactory performance or other just cause, merit employees may be subject to any of the following discipline by his/her Division Head, regardless whether a prior warning has been issued to the employee for the same or similar conduct:
>
> ***
>
> C)   Suspension - A Division Head may suspend an employee without pay for just cause.

(Doc. 58-3, pp. 11-13).

The record shows that Frith received a written notice indicating that her "pre-disciplinary hearing is scheduled for Thursday, March 1, 2007 at 9:00 a.m. in Major Lowery's Office in Bay Minette." (Doc. 61-9, p. 1). During the pre-disciplinary hearing, which was in front of Major Lowery, Frith admitted that she participated in the MySpace conversation and that she provided Ms. Flowers with Ms. Rivera's information. (Doc. 58-3, pp. 5-6, ¶ 8; Doc. 58-2, pp. 24-28). Major Lowery suspended Frith for three days without pay. (Doc. 58-3, p. 6, ¶ 9). Frith's suspension was made retroactive, and she was immediately reinstated. (Doc. 58-3, p. 6, ¶ 9).

An employee may appeal a disciplinary decision of the division head to the sheriff. (Doc. 58-3, p. 14). Frith could also have requested a hearing before the Grievance Appeals Board, which is a procedure that was adopted pursuant to the Personnel System for the Sheriff of Baldwin County, Alabama. (Doc. 58-3, p. 15). Both the sheriff and the employee may be represented by counsel before the Grievance Appeals Board. (Doc. 58-3, p. 17). Although Frith knew that she could take advantage of an appeal, she resigned instead on March 7, 2007. (Doc. 58-2, pp. 24-25, and 29). She started working for Work Force Montgomery on March 7, 2007. (Doc. 58-2, p. 6).

Frith alleged in her complaint that Sgt. Cook committed an infraction similar to Frith's

but that he was not punished.  (Doc. 31, pp. 4-5, ¶¶ 16 and 19).  Frith testified that Sgt. Cook

asked her to give him information about his father that was contained in the computer system,

which Frith did.  (Doc. 58-2, p. 39).  Frith does not know whether or not Sgt. Cook was

investigated.  (Doc. 58-2, pp. 40-41).  The record does not otherwise show whether Sgt. Cook

was investigated or punished.

Frith also alleged that three deputies were treated better than was Frith after they engaged

in inappropriate sexual relations with Ms. Flowers.  (Doc. 31, p. 5, ¶ 21).

## IV.   SECTION 1983 CLAIMS AGAINST THE SHERIFF IN HIS OFFICIAL CAPACITY

Frith brings her First Amendment freedom of speech and her Fourteenth Amendment

right to due process constitutional claims pursuant to 42 U.S.C. § 1983.  § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress, except that in
> any action brought against a judicial officer for an act or omission taken in such
> officer's judicial capacity, injunctive relief shall not be granted unless a
> declaratory decree was violated or declaratory relief was unavailable.  For
> purposes of this section, any Act of Congress applicable exclusively to the
> District of Columbia shall be considered to be a statute of the District of
> Columbia.

42 U.S.C. § 1983.

§ 1983 does not itself confer any substantive rights.  See Almand v. DeKalb County, 103

F.3d 1510, 1512 (11th Cir. 1997).  "Section 1983 opened the federal courts to private citizens,

offering a uniquely federal remedy against incursions under the claimed authority of state law

upon rights secured by the Constitution and laws of the Nation."  Mitchum v. Foster, 407 U.S.

225, 239 (1972).  See also Albright v. Oliver, 510 U.S. 266, 271 (1994) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.  The first step in any such claim is to identify the specific constitutional right allegedly infringed.") (internal quotations and citation omitted).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

Frith's § 1983 claims against the sheriff in his official capacity fail as a matter of law. The sheriff is an executive officer of the State of Alabama.  ALA. CONST. art. V, § 112. Consequently, the claims against him are effectively against the State of Alabama.  Hafer v. Melo, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the State.").  The Eleventh Amendment precludes § 1983 actions brought against the state.  Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (§ 1983 action against sheriff is barred by the Eleventh Amendment).  The sheriff is entitled to Eleventh Amendment immunity from the § 1983 claim against him in his official capacity.  Dean v. Barber, 951 F.2d 1210, 1215 n.5 (11th Cir. 1992) (suit against sheriff in official capacity "is prohibited by the Eleventh Amendment because the State of Alabama is the real party in interest"); Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1997) (affirming district court's ruling that a sheriff "is a state official and, therefore, . . . entitled to" Eleventh Amendment Immunity to § 1983 claim brought against him in his official capacity); Carr v. Florence, 916 F.2d 1521, 1525 (11th Cir. 1990) (Alabama sheriffs are entitled to Eleventh Amendment immunity from § 1983 suits brought against them in their official capacities.).

Also, § 1983 prohibits a "person, acting under color of [law]," from depriving others of rights. A state official sued in an official capacity is not a "person" under § 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Carr, 916 F.2d at 1525 n.3 (Neither a State nor its officials acting in their official capacities are a "person" under § 1983.).

Consequently, the motion for summary judgment on the § 1983 claims against the sheriff in his official capacity is **GRANTED**.[2]

## V.  § 1983 CLAIMS AGAINST THE SHERIFF IN HIS INDIVIDUAL CAPACITY AND AGAINST THE COUNTY COMMISSION

To the questionable extent that Frith brought a claim against the sheriff in his individual capacity, the claim fails because the facts do not show that Frith's constitutional rights were violated. As a consequence, the claim against the sheriff fails because he is entitled to qualified immunity. The claim against the County Commission fails because there is no genuine issue of material fact as to the violation of a constitutional right.

### A.  Qualified Immunity

When government officials are sued in their individual capacities for money damages based upon alleged civil rights violations, they may assert an affirmative defense of qualified immunity. See Swint v. City of Wadley, Ala., 51 F.3d 988, 994 (11th Cir. 1995). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir.

---

[2]The sheriff indicates that Frith could theoretically pursue injunctive relief against him in his official capacity and argues that such a claim should fail on its merits. Garrett v. The Univ. of Ala. at Birmingham Bd. of Tr., 193 F.3d 1214, 1216 (11th Cir. 1999). Frith has not made any claim for injunctive relief, so the court does not consider this argument.

2002) (internal quotations omitted).

In order to set up the defense of qualified immunity, the sheriff has to show that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotations omitted). There is no dispute that any actions the sheriff took were within his discretionary authority.

Because the sheriff established that he was acting within his discretionary authority, the burden shifts to Frith to show that it would be inappropriate for the sheriff to receive qualified immunity in this case. Id. To meet her burden, Frith first has to show that, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. The second step of the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition[.]" Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotations and citations omitted). In other words, Frith must show that the sheriff had "fair warning" that his alleged conduct was unconstitutional. Id. at 741. See also Pearson v. Callahan, 129 S. Ct. 808 (2009) (The process for establishing a qualified immunity defense can be tailored to the details of a particular case.).

**B.      The First Amendment Claim**

Frith's First Amendment claim is based on her claim that the actions taken against her improperly infringed on her First Amendment right to use the Computer Aided Dispatch System to access information and distribute it to Ms. Flowers.  The Eleventh Circuit applies a four-part test to determine if Frith, a public employee, was unlawfully disciplined for exercising her right to freedom of speech.

> A state may not demote or discharge a public employee in retaliation for protected speech.  This circuit has developed a four-part test to determine whether an employee suffered such retaliation.  First, a court must determine whether the employee's speech may be fairly characterized as constituting speech on a matter of public concern.  If so, the district court must weigh the employee's first amendment interests against the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.  Should the employee prevail on the balancing test, the fact-finder determines whether the employee's speech played a substantial part in the government's decision to demote or discharge the employee.  Finally, if the employee shows that the speech was a substantial motivating factor in the employment decision, the state must prove by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct.

Watkins v. Bowden, 105 F.3d 1344, 1352-53 (11th Cir. 1997) (quotation and citation omitted).[3]

The "threshold question of whether an employee's speech may be fairly characterized as constituting speech on a matter of public concern is a question of law[.]"  Id. at 1353.  Frith did not enjoy absolute freedom of speech at work.  Vila, 484 F.3d at 1339.  For her "speech to rise to the level of public concern, it must relate to a matter of political, social, or other concern to the community."  Watkins, 105 F.3d at 1353.  The court should "consider the content, form, and

---

[3]Frith does not claim that she was demoted or discharged, but she does not make efforts to distinguish the foregoing rule from Watkins based on that factual difference.  See Vila v. Padron, 484 F.3d 1334, 1339 (11th Cir. 2007) (broadly holding that "[w]hen a public employee speaks as an employee on matters of personal interest and not as a citizen upon matters of public concern, the First Amendment is not implicated")

context of the employee's statements, the employee's attempts to make the concerns public, and the employee's motivation in speaking." Id.

The record is devoid of any evidence whatsoever that tends to show Frith was punished for engaging in speech that related to political, social, or other concern to the community. Frith has not provided any support for her assertion that giving Ms. Rivera's information to Ms. Flowers was speech of a public concern, and the court is aware of none. The motions for summary judgment on the First Amendment claim against the sheriff in his individual capacity and against the County Commission are **GRANTED** because Frith's speech was not a matter of public concern.

**C.     The Fourteenth Amendment Claim**

Frith's Fourteenth Amendment claim is based on the fact that she could not bring an attorney to her pre-disciplinary hearing. The due process clause in the Fourteenth Amendment "provides two different kinds of constitutional protection: procedural due process and substantive due process." McKinney v. Pate, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc). Presumably Frith intends to bring a procedural due process claim, as opposed to a substantive due process claim. Id. at 1560 (Overturning prior Eleventh Circuit precedent by holding that, "in non-legislative cases, only procedural due process claims are available to pretextually terminated employees."). This is a non-legislative, or executive, case. See id. at 1557 n.9 (describing the difference between executive and legislative acts).

The facts show that Frith received a pre-disciplinary hearing. She contends that the outcome of the pre-disciplinary hearing is tainted by a deprivation of her procedural due process rights because she was not allowed to bring an attorney or to take other actions at the hearing.

14

The pre-disciplinary hearing was "not a mini-trial and need not definitely resolve the propriety of the discharge. It should be an initial check against mistaken decisions–essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Id. at 1561 (quotations and citation omitted). Frith was entitled to "oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story." Id.

Assuming that the pre-disciplinary hearing was constitutionally flawed because Frith could not bring an attorney to it, "[a]ll that due process requires . . . is a post-deprivation means of redress for property deprivations satisfying the requirements of procedural due process." Id. at 1563 (quotations and citation omitted). In other words, even if Frith "suffered a procedural deprivation" during the pre-disciplinary hearing, she "has not suffered a violation of [her] procedural due process rights unless and until the [defendant] refuses to make available a means to remedy the deprivation." Id. (emphases in original). In other words, "only the [defendant's] refusal to provide a means to correct any error resulting from the bias would engender a procedural due process violation." Id. See also Hicks v. Jackson County Comm'n, 374 F. Supp. 2d 1084, 1089-1093 (N.D. Ala. 2005) (applying rule from McKinney).

Frith had the opportunity to appeal the decision from the pre-disciplinary hearing, but declined to take advantage of it. Watts v. Fla. Intern. Univ., 495 F.3d 1289, 1294 (11th Cir. 2007) (affirming dismissal of procedural due process claim because plaintiff did not take advantage of full range of administrative remedies); McKinney, 20 F.3d at 1565 ("The fact that [plaintiff] failed to avail [herself] of the full procedures . .. does not constitute a sign of their inadequacy."). The review could have fully remedied any loss Frith suffered. Id. at 1564

(Procedural remedies "need not provide all relief available under section 1983" as long as they fully compensate the plaintiff for the property loss.).  Frith's failure to take advantage of an apeal precludes her recovery in this case.

The motions for summary judgment on the Fourteenth Amendment claims against the sheriff in his individual capacity and against the County Commission are **GRANTED** because Frith did not show that she suffered a violation of her right to procedural due process.

## VI.    THE TITLE VII CLAIMS

Plaintiff's Title VII claim is based on discriminatory discipline.  As a preliminary matter, to the extent Frith may have sued the sheriff in his individual capacity, the sheriff is due summary judgment because the Eleventh Circuit does not allow individual capacity suits under Title VII.  Albra v. Advan, Inc., 490 F.3d 826, 832 (11th Cir. 2007) ("this court has long held that individuals are not amenable to private suit under Title VII") (citing cases).

As is often true, there is no direct evidence of discrimination in this case.[4]  Frith must therefore show racial animus pursuant to the burden shifting procedure that the Supreme Court articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  As explained in E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265 (11th Cir. 2002):

> Under this framework, the plaintiff initially must establish a prima facie case of discrimination.  By establishing a prima facie case, the plaintiff creates a

---

[4]See Perryman v. Johnson Products Co., Inc., 698 F.2d 1138, 1143 (11th Cir. 1983) ("[S]ome plaintiffs are able to prove the existence of discriminatory intent by direct evidence; in these rare cases, the plaintiff is not required to rely on the inference of discrimination created by the prima facie case of McDonnell Douglas."); EEOC v. Reichhold Chemicals, Inc., 988 F.2d 1564, 1570 (11th Cir. 1993) ("This circuit has clarified . . . that a Title VII plaintiff need not submit direct proof of intent to discriminate, but can rely on circumstantial evidence.  Requiring direct evidence would eviscerate Title VII's effectiveness because direct evidence rarely exists in disparate treatment cases.") (citations omitted).

rebuttable presumption that the employer unlawfully discriminated against her. The burden then shifts to the employer to rebut this presumption by producing evidence that its action was taken for some legitimate, non-discriminatory reason. Should the employer meet its burden of production, the presumption of discrimination is rebutted, and the inquiry "proceeds to a new level of specificity," in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination. Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff.

Id. at 1272-73 (citations omitted).

In McDonnell Douglas, the Supreme Court outlined the following four elements for a plaintiff to show in order to make a prima facie case:

(I) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

McDonnell Douglas, 411 U.S. at 802.[5]  Although the court outlined a fairly specific four-part prima facie case, the court cautioned that "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from [plaintiff] is not necessarily applicable in every respect to differing factual situations."  Id. at 802 n.13.

The Eleventh Circuit has followed the instruction to apply prima facie tests in a flexible manner.  "The methods of presenting a prima facie case are not fixed; they are flexible and depend to a large degree upon the employment situation."  Wilson v. B/E Aero., Inc., 376 F.3d 1079, 1087 (11th Cir. 2004) (internal citations omitted).  In general, a plaintiff seeking to recover under Title VII for discriminatory discipline must show:

---

[5]Of course, a plaintiff need not belong to a minority group in order to meet the first element of the prima facie case.  See Bass v. Board of County Com'rs, Orange County, Fla., 256 F.3d 1095, 1102-03 (11th Cir. 2001).

> (1) she is a member of a protected class; (2) she was subjected to an adverse
> employment action; (3) her employer treated similarly situated employees outside
> of her protected class more favorably than she was treated; and (4) she was
> qualified to do the job.

Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). With respect to the

third element of the prima-facie test:

> In determining whether employees are similarly situated for purposes of
> establishing a prima facie case, it is necessary to consider whether the employees
> are involved in or accused of the same or similar conduct and are disciplined in
> different ways. The most important factors in the disciplinary context are the
> nature of the offenses committed and the nature of the punishments imposed. We
> require that the quantity and quality of the comparator's misconduct be nearly
> identical to prevent courts from second-guessing employers' reasonable decisions
> and confusing apples with oranges.

Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999) (internal quotations and citations

omitted).

Frith sets up four individuals as possible comparators. Three of them may have engaged

in inappropriate sexual relations with Ms. Flowers but were not adequately punished, Frith says.

These three individuals are not proper comparators because their alleged sexual interludes are

completely dissimilar to Frith's misuse of a confidential information.

The fourth comparator is Sgt. Cook. Sgt. Cook asked Frith to give him information

regarding his father that was contained in the computer system, which Frith did. Sgt. Cook is not

a proper comparator, either. First, he is more similar to Ms. Flowers than he is to Frith. Like

Ms. Flowers, Sgt. Cook asked Frith to provide information from the computer system. He did

not obtain the information himself and pass it to another individual, which is what Frith was

punished for doing. Also, the record is silent about whether or not Sgt. Cook was punished.

Frith has to show that the nature of the punishment imposed on Sgt. Cook was different from the

nature of the punishment that was imposed on her.  She has come forward with no evidence in this regard.

Both motions for summary judgment on the Title VII claims are **GRANTED** because Frith has not come forward with evidence to support her prima facie case.

**VII.    CONCLUSION**

For the foregoing reasons, both motions for summary judgment are **GRANTED** in their entirety as to all claims.  All other motions pending in the case are **MOOT**.

**DONE** and **ORDERED** this 31st day of March, 2009.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE